# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATE OF AMERICA ex rel. | ) | |
| MICHAEL PENNY, | ) | |
| | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | No. 97-CV-5674 |
| v. | ) | |
| | ) | Judge Marvin E. Aspen |
| GEORGE DeTELLA, Warden | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM ORDER AND OPINION

MARVIN E. ASPEN, District Judge:

Michael Penny, a prisoner at Menard Correctional Center in Menard, Illinois, has petitioned for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The respondent now moves to dismiss Penny's petition as untimely. For the reasons set forth below, we grant the Respondent's motion to dismiss.

## BACKGROUND AND PROCEDURAL HISTORY

We begin with a detailed recitation of both the factual background and lengthy procedural history relating to Penny's detention.

### I. Warrant and Search

On August 16, 1990, ten to fifteen Chicago police officers searched Petitioner Michael Penny's home pursuant to a warrant obtained the previous evening. (Ex. D. at 1-2, 5.) [1] The warrant stated that an unidentified informant told Officer Terrence Shields he purchased a half

---

[1] Unless designated otherwise, all citations to exhibits refer to Respondent's exhibits in support of the motion to dismiss. (Dkt. No. 23.)

ounce of cocaine from Penny on August 15th, 1990, and that Penny retrieved the cocaine from a safe in his bedroom.  (*Id*. at 5.)

When the officers arrived to execute the warrant, they first knocked at the front door and announced their presence.  (*Id.* at 1-2).  About a minute later, having received no response, the officers broke down the door with a battering ram, and entered the home, where they found Penny lying in a bedroom.  (*Id.* at 2.)  They directed him to show his hands, get out of bed, and walk towards Officer Shields.  Penny, dressed only in underwear, asked for his clothes and pointed to a shirt near his bed.  (*Id.*)  Officer Shields picked up the shirt, and found several plastic bags containing white powder: four "pony packs" containing a total of 0.2 grams of heroin and a separate bag containing 0.24 grams of cocaine.  (*Id.*)  Another officer, Richard Sanchez, lifted the mattress from the box spring bed and found a fully loaded semi-automatic pistol located directly underneath where Penny had been lying.  (*Id.*)  In searching the rest of the house, the officers also located a gym bag containing four more plastic bags, holding a total of 0.2 grams of heroin.  (*Id.* at 2-3.)  In the kitchen, they found two active pagers, a triple-beam Ohaus scale, a canister of mannitol, strainers, measuring spoons, a grinder, and a tablet of "pony packs" similar to those found in Penny's shirt.  (*Id.* at 3).  Cocaine was also found inside a plastic bag recovered from a basement bathroom closet.  (*Id.*)

## II. Trial and Sentencing

Penny was charged with possession of a controlled substance, cocaine, with intent to deliver; possession of a controlled substance, heroin, with intent to deliver; and armed violence.  (*Id.* at 16).

In 1993, Penny was tried in the Circuit Court of Cook County, Illinois.  The trial judge, who had previously issued the warrant, denied Penny's pre-trial motion requesting a hearing on

the validity of the warrant. (Ex. A at 2.) Defense counsel, Chester Slaughter, learned prior to

trial that Officer Shields, who had obtained the warrant based on an unidentified informant's

statement, had been suspended from the police force for 15 months for false reporting, relating

to his concealing another officer's misconduct. (Ex. O, at App. C.) Slaughter raised this issue

with the prosecutor and trial court, but quickly conceded that the facts of the false reporting

incident were not relevant, and the trial court granted the State's motion to exclude the

evidence.[2] (*Id.*) At trial, an expert police witness, Thurmond Royster, offered detailed

testimony that each of the recovered items – including two beepers, a triple beam Ohaus scale,

a canister of mannitol, measuring spoons, strainers, a coffee grinder, and a tablet of "pony

packs," and the handgun – were typically used in drug sales operations. (Ex. B at 12-13.)

In support of Penny's contention that he did not have knowing control over the entirety

of the premises, and thus did not know about or actually possess all of those items, two

witnesses testified to living at the residence with Penny at the time. Penny's girlfriend, Tammy

Brown, testified that she and her four-year-old son lived at the residence with Penny and

Donnell Logan in August 2006. (Ex. D at 10.) To support this testimony, Brown reached into

her purse and began to pull out receipts purporting to show her purchases of a television and

range delivered to Penny's residence in March 1990. (*Id.* at 10-11.) The State objected to the

introduction of the documentary evidence, which had not been produced by defense counsel,

Mr. Slaughter, during discovery. (*Id.* at 11.) Defense counsel explained he had not intended to

offer the evidence, which the trial judge then excluded, instructing the jury to disregard

---

[2] The partial transcript included in the Respondent's exhibits attached to the pending motion makes clear that a motion was granted in favor of the State with regard to this potential testimony. However, the contours of that motion are not clear, as the transcript picks up into the discussion, but the context strongly suggests it was the exclusion of that impeaching evidence. (Ex. O, at App. C.)

Brown's testimony about the receipts.  (*Id.*)  On the stand, Brown also offered explanations for the acquisition of several of the items recovered from the kitchen.  (*Id.* at 14).

Donnell Logan testified that he also resided at the house, and that he owned the gym bag inside of which the police found four plastic bags containing .2 grams of heroin.  (Ex. A at 6-7; Ex. B at 20).  However, Logan testified that the heroin the police recovered in the gym bag was packaged differently than the heroin that he had kept in the bag.  (Ex. A at 6-7; Ex. B at 20).  Logan also testified that he owned the gun that was recovered by Officer Sanchez.  (Ex. A at 6-7; Ex. B at 20-21, 45.)  He testified that he stored the gun in a box inside the closet, though the State offered rebuttal testimony that Logan had previously claimed outside of court that the gun was kept inside the gym bag with the heroin.  (Ex. B at 20-21.)

Based on the evidence, on April 30, 1993, a jury convicted Penny of armed violence; possession of a controlled substance, heroin, with intent to deliver; and possession of a controlled substance, cocaine, with intent to deliver.  (Ex. H at 1.)  The armed violence conviction was Penny's third class X felony, and as a result he was adjudged an habitual criminal under the Illinois Habitual Criminal Act and was sentenced to natural life in prison, with a concurrent 14-year term for possession of cocaine with intent to deliver.  (Ex. D at 1, 3-4, 17-18.)  Prior to sentencing, defense counsel, as a supplement to a motion for a new trial, requested a hearing on possible jury misconduct.  (Ex. R. App. A-5.)  Mr. Slaughter told the court he received a phone call from a juror, who claimed that the foreman and other jurors coerced her to sign the guilty verdict.  (*Id.*)  The trial court denied the motion, pointing to the lack of an affidavit from the juror and the fact that claim reflected only on the methods of deliberation within the jury room and not coercion or improper communication from the outside.  (*Id.* at 6-7.)

### III. Direct Appeal

Penny appealed his conviction and sentence to the Illinois Appellate Court, claiming (1) that the trial court erred in declining to conduct a hearing regarding whether the search warrant that led to the discovery of narcotics in his home had been obtained through the use of false information, pursuant to *Franks v. Delaware*, 438 U.S. 154, 155, 98 S. Ct. 2674, 2676 (1978); (2) that he was not proven guilty beyond a reasonable doubt; (3) that the trial court erred when it refused to admit documentary evidence in support of his ex-girlfriend's testimony that she shared his home; (4) that the trial court erred by admitting expert testimony about the conduct of drug dealers; (5) that the trial court failed to conduct a hearing on allegations of possible jury misconduct; and (6) that his sentence as an habitual criminal constituted "double enhancement" not intended by the Illinois legislature. (Ex. A at 1.)

On March 29, 1996, the Illinois Appellate Court affirmed the convictions and sentences. (Ex. D.) Penny then filed a petition for leave to appeal ("PLA") to the Illinois Supreme Court, continuing to assert all the claims presented before the appellate court except for the claim that the trial court failed to conduct a hearing on allegations of possible jury misconduct. (Ex. E.) The Illinois Supreme Court denied the PLA on October 2, 1996. (Ex. F.)

### IV. Petition for Habeas Corpus and First State Post-Conviction Proceeding

On August 7, 1997, Penny filed a petition for writ of habeas corpus, pursuant to 28 U.S.C. § 2254, in which he asserted the five claims he maintained before Illinois Supreme Court in his PLA. (Pet. at 4-4(a), Dkt. No. 1.) On the same day, he moved to stay the federal habeas corpus proceedings pending completion of the state post-conviction proceedings, which he had also initiated that day. (1997 Mot. Stay, Dkt. No. 4.) On August 18, 1997, we denied

Penny's motion for a stay and dismissed the habeas corpus petition for failure to exhaust state remedies. (Order of 10/18/1997, Dkt. No. 5.)

Also on August 7, 1997, Penny filed, through counsel, the first of his two state post-conviction petitions for relief under the Illinois Post-Conviction Hearing Act ("IPCHA"), 725 ILCS 5/122. (Ex. G.) In his first state post-conviction petition, Penny claimed: (1) that he was denied due process because the trial judge that had issued the search warrant did not recuse himself from ruling on the *Franks* motion; (2) that he was denied effective assistance of counsel where trial counsel did not file a motion requesting recusal; and (3) that he was denied effective assistance of counsel where his appellate counsel neglected to raise these two issues on direct appeal. (*Id.*)

On September 29, 1997, the state trial court dismissed Penny's motion for post-conviction relief as untimely, and in the alternative, without merit. (Ex. H.) The court held the petition untimely because the IPCHA then stated that "[n]o proceedings . . . shall be commenced more than 6 months after the denial of a petition for leave to appeal or the date for filing such a petition if none is filed . . . or 3 years from the date of conviction, whichever is sooner." 725 ILCS 5/122-1 (1997). For Penny, the sooner of the two was April 30, 1996, which was three years after the date of his conviction, and well over a year before he brought the post-conviction petition.

Penny appealed the dismissal of his state post-conviction petition to the Illinois Appellate Court, maintaining that the same trial court that issued the search warrant had erroneously declined to hold a *Franks* hearing, and claiming that the post-conviction trial court should have granted him additional time to provide supporting documentation explaining the petition's untimeliness. (Ex. J.) On December 30, 1999, the Illinois Appellate Court affirmed

the trial court's dismissal of Penny's post-conviction petition as untimely, and rejected his

claim of ineffective assistance of post-conviction counsel.  (Ex. L.)  Penny then filed a *pro se*

PLA asserting he was denied effective assistance of post-conviction appellate counsel where

counsel did not adequately allege the unreasonable assistance of post-conviction trial counsel.

(Ex. M.)  The Illinois Supreme Court denied the PLA on July 5, 2000.  (Ex. N.)

**V. Subsequent Habeas Corpus Motion and Second Post-Conviction Proceeding**

On July 17, 2000, Penny filed another motion to stay of his federal habeas petition, this

time pending completion of his second state post-conviction proceedings, which he had

initiated earlier that year.  (2000 Mot. Stay, Dkt. No. 9.)   We denied the motion as moot, as

Penny's habeas corpus petition had previously been dismissed without prejudice for failure to

exhaust state remedies, but we informed Penny that he could file a motion for reinstatement of

this case within 60 days after the termination of his post-conviction proceedings.  (Order of

7/25/2001, Dkt. No. 10.)

Penny had filed his second post-conviction petition *pro se* on February 7, 2000, while

the PLA from the first post-conviction proceeding was still pending.  In his second post-

conviction petition, Penny claimed: (1) that trial counsel, Mr. Slaughter, operated under either a

per se or actual conflict of interest where he, Slaughter, was under criminal investigation at the

time of Penny's trial; (2) that Penny did not waive his right to conflict free counsel; (3) that

counsel on direct appeal and during his first post-conviction proceeding were ineffective for

failing to discover attorney Slaughter's conflict and raise the issue; and (4) that his life sentence

was unauthorized because the legislation that changed armed violence from a misdemeanor to a

felony violated the Single Subject Clause of the Illinois Constitution.  (Ex. O.)  On February

14, 2000, Penny filed a *pro se* supplemental post-conviction petition alleging he was denied

due process where the state failed to inform him of attorney Slaughter's alleged conflict of interest. (Ex. P.) On April 28, 2000, the court dismissed Petitioner's claim that his life sentence was unauthorized, but docketed the petition regarding the other claims and appointed counsel to represent Penny. (Ex. Q.) The docketed claims centered on Penny's assertion that attorney Slaughter operated under a conflict of interest because at the time of Penny's trial, Slaughter was the subject of a federal criminal investigation related to Penny's father. (Ex. T.).

From 2000 to 2005, Penny's post-conviction action remained at the second stage of the proceeding before the circuit court,[3] during which time Penny filed several supplemental motions. On March 13, 2000, Penny filed a *pro se* motion to supplement his second post-conviction petition, claiming that Slaughter was ineffective for failing to disclose relevant documentation supporting his claim that other people lived with him, and failing to provide confirmation that a juror contacted him regarding alleged coercion during deliberations.[4] (Ex. R.) On August 4, 2003, Penny filed a *pro se* motion to cite additional authority and argument in support his allegations of ineffective assistance of counsel, alleging that Slaughter failed to inform him of the conflict of interest, failed to introduce evidence to impeach Officer Shields' testimony, failed to allege that Penny's conviction and sentence were invalid pursuant to Illinois statute and case law, failed to challenge the chain of custody for the cocaine and heroin seized from his home, and that counsel on direct appeal was ineffective in failing to raise the same issues. (Ex. S.) On March 2, 2004, Penny filed, through appointed counsel, a

---

[3] The IPCHA contemplates a three stage process. 725 ILCS 5/122; *see Davis v. Lambert*, 388 F.3d 1052, 1060 (7th Cir. 2004) (quoting *People v. Gardner*, 348 Ill. App. 3d 479, 483, 810 N.E.2d 180, 184 (2004)). The first stage requires "the gist of a constitutional claim," the second requires "a substantial showing of a constitutional violation," and the third provides an evidentiary hearing. *Id.*

[4] This motion was filed before the court decided the stage one issues and docketed several of the claims on April 28, 2000, but it was not addressed by the court in that decision. (Ex. Q.)

supplemental post-conviction petition alleging that Slaughter operated under a conflict of interest or rendered ineffective assistance where he was allegedly representing Petitioner at the same time that he was facing Illinois Attorney Registration and Disciplinary Commission ("ARDC") proceedings and a federal investigation. (Ex. T.) Then, on November 29, 2004, Penny filed a *pro se* amended post-conviction petition alleging that he was denied his right to confrontation because the standard under *Franks* was rendered unconstitutional by *Crawford v. Washington*, 541 U.S. 36, 53-54, 124 S. Ct. 1354, 1365-66 (2004). (Ex. U.)

The State responded with various motions to dismiss Penny's amended and supplemented second post-conviction petition (Ex. V), which were granted by the circuit court on November 3, 2005. (Exs. W & X.) The court held that Penny failed to make a showing that Slaughter was ineffective in his case. (Ex. X.)

Penny again appealed to the Illinois Appellate Court, at which point Penny's appointed appellate counsel moved to withdraw pursuant to *Pennsylvania v. Finley*, 481 U.S. 551, 557, 107 S. Ct. 1990, 1994 (1987), contending that Penny's claims lacked arguable merit. (Ex. Y.) Penny filed a *pro se* response to his counsel's motion to withdraw, maintaining each of the claims asserted before the trial court in his second post-conviction petition and its various amendments and supplements.[5] (Ex. Z.) Penny disputed his counsel's contention that he would have been aware of Mr. Slaughter's disqualification in the civil forfeiture proceeding against his mother, Clara Penny, or of Mr. Slaughter's alleged implication in the narcotics conspiracy at issue in the related criminal trial of his father, John Penny. Penny insisted that although allegations of his involvement in that same narcotics conspiracy with his parents were

---

[5] Penny includes as exhibits copies of additional motions including his claim that his sentence violated *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 2362-63 (2000). (Pet. App. Ex. Nos. 13-16.)

included in two published opinions resulting from the civil case against his mother, the relevant records were under seal so he was not aware of the allegations of his involvement in the conspiracy. (Ex. Z at 17.) He attached an affidavit stating that he was not aware of the allegations described in the published case reports, and that he did not learn of the alleged conflict until conducting research for his habeas corpus petition in 1999. (Ex. Z, at App. D.)[6] On February 13, 2008, the Illinois Appellate Court granted counsel's motion to withdraw and affirmed the dismissal of the petition. (Ex. AA.) Penny filed a PLA with the Illinois Supreme Court, maintaining all the same claims as before the trial and appellate courts, except for the claim that the act enabling his life sentence violates the Single Subject Clause of the Illinois Constitution. (Exs. BB & CC.) The Illinois Supreme Court denied the PLA on May 29, 2008, thus ending the last of Penny's state claims related to his 1993 conviction and sentence. (Ex. DD.)

Penny filed a motion for reinstatement of his federal habeas case and an amended petition for writ of habeas corpus on July 15, 2008. (Am. Pet., Dkt. No. 18.) The amended petition appears to be the same petition as previously filed in 1997, but with the records of the subsequent state proceedings attached. On July 21, 2008, we granted Penny's motion for reinstatement and ordered Respondent to answer or respond to the petition. (Order of

---

[6] Petitioner also attached an affidavit from his father, John Penny, stating that he had not spoken with Mr. Slaughter since August of 1993, and had not paid Mr. Slaughter for representing Michael Penny. (Ex. Z, at App. C.) As Petitioner notes, this conflicts with Mr. Slaughter's own explanation to the ARDC that John Penny had paid for more than half of the cost of Michael Penny's trial representation, and that he was in communication with John Penny on an almost daily basis following Michael's conviction, with no complaints about the representation. Slaughter also misstates the date of Michael Penny's trial as 1990, rather than 1993, and thus concludes that the trial was six years before the ARDC investigation so there was no actual conflict. (Ex. Z, at App. A.)

07/21/2008, Dkt. No. 19.)  Respondent filed a motion to dismiss the petition as time-barred.

(Mot. to Dismiss, Dkt. No. 22 [hereinafter Mot.].)  We now address that issue.

## ANALYSIS

Penny brings this habeas corpus action pursuant to 28 U.S.C. § 2254, as amended by the

Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  As Penny has filed his

habeas corpus petition *pro se*, we must construe liberally the allegations in his petition. *Haines*

*v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 596 (1972); *Marshall v. Knight*, 445 F.3d 965, 969

(7th Cir. 2006).

### I. AEDPA's 1-Year Limitation Period

Respondent contends that Penny's habeas petition must be dismissed as time-barred.

Under 28 U.S.C. § 2244(d), "[a] 1-year period of limitation shall apply to an application for

writ of habeas corpus by a person in custody pursuant to the judgment of a State court."  The

limitation period generally begins to run from "the date on which the judgment became final by

conclusion of direct review or the expiration of the time for seeking such review."  28 U.S.C. §

2244(d)(1)(A).  The "time for seeking such review" on direct appeal includes the 90-day period

for filing a petition for certiorari to the United States Supreme Court, whether or not one is

ultimately filed.  *Lawrence v. Florida*, 549 U.S. 327, 333-34, 127 S. Ct. 1079, 1083-84 (2007);

*Jones v. Hulick*, 449 F.3d 784, 787-88 (7th Cir. 2006).  The Illinois Supreme Court denied

Penny's petition for leave to appeal the conviction on October 2, 1996.  Thus, Penny's federal

habeas clock began to run when the period for filing a petition for certiorari to the Supreme

Court expired 90 days later, on January 1, 1997.

Penny's petition would therefore be untimely if filed a year after that date, unless the

time period could be statutorily or equitably tolled, or if § 2244(d)(1) permits the time period to

run from a later date. However, the limitations period may run from a later date only when unconstitutional or unlawful state action has created "an impediment to filing an application," when "the constitutional right asserted . . . has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review," or when "the factual predicate of the claim or claims could have been discovered through the exercise of due diligence" only after the limitations period would have otherwise begun to run. 28 U.S.C. § 2244(d)(1)(B)-(D). To the extent that Penny's current habeas petition may be construed to include claims relating to his trial counsel's alleged conflict of interest (*see* Mot. at 17-19; Resp. at 7), that claim might fall within category of those whose factual predicates could not have been discovered before the federal habeas time limitation began to run. *See* § 2244(d)(1)(D). This issue of statutory tolling is therefore addressed separately below.

## II. Statutory Tolling

Once the one-year limitations period begins to run, it is tolled while "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2). An earlier, properly-filed federal habeas petition does not toll the time period because "other collateral review" means only state collateral review. *Duncan v. Walker*, 533 U.S. 167, 172-73, 121 S. Ct. 2120, 2124-25 (2001). Unlike the time period for seeking direct review under § 2244(d)(1)(A), the time period during which a collateral proceeding is "pending" under § 2244(d)(2) does not include the 90 days to file a petition for certiorari to the Supreme Court. *Lawrence*, 549 U.S. at 333-34, 127 S. Ct. at 1083-84. Most crucially, a collateral state proceeding is not "properly filed" under AEDPA if the state court determines that it is untimely. *Pace v. DiGuglielmo*, 544 U.S. 408, 417, 125 S. Ct. 1807, 1814 (2005); *see also Brooks v. Wall* 279 F.3d 518, 520-21, (7th Cir. 2002); *Freeman*

-12-

*v. Page*, 208 F.3d 572, 576-77 (7th Cir. 2000). A state court finding of untimeliness renders the state action improperly filed even when the state-law time limitation is not jurisdictional and allows the state court to entertain the action notwithstanding its untimeliness. *Allen v. Siebert*, 128 S. Ct. 2, 3-4 (2007) (holding that *Pace* applied to Alabama statute under which the time limit operated as an affirmative defense).

Penny filed his initial state post-conviction action under the IPCHA, which provides for a three-stage trial-level proceeding. 725 ILCS 5/122. In the first stage of Penny's proceeding, the state trial court dismissed the action as untimely, and in the alternative, without merit. (Ex. H.) The appellate court affirmed the finding of untimeliness, without proceeding to evaluate the merits. (Ex. L.) Penny contends that the state courts erred in dismissing his post-conviction claim based upon a finding of untimeliness in the first stage of the proceeding. (Resp. at 3-4.) Indeed, the Illinois Supreme Court held in *People v. Boclair* that trial courts hearing actions under the IPCHA should not dismiss for untimeliness in the first stage of the proceeding, because the statute's timeliness requirements are not jurisdictional. 202 Ill. 2d 89, 97-99, 789 N.E.2d 734, 739-40 (2002). However, the Supreme Court ruled in *Allen v. Siebert* that even a non-jurisdictional finding of untimeliness renders the state action improperly filed for the purposes of § 2244(d). 128 S. Ct. at 3-4 (holding that a state finding of untimeliness means that the action was not properly filed, even where the state time limitation operates as an affirmative defense). Moreover, the finding that Penny's first post-conviction action was untimely was not deficient, because the Illinois Supreme Court subsequently held that its holding in *Boclair* cannot apply retroactively. *People v. Britt-El*, 206 Ill. 2d 331, 340-42, 794 N.E.2d 204, 210-12 (2002). Thus, Penny's first state conviction proceeding was not timely and not "properly filed" for the purposes of 28 U.S.C. § 2244(d). Consequently, Penny's federal

-13-

habeas clock was not tolled by his first state post-conviction proceeding, and therefore expired on January 1, 1998.

### III. Equitable Tolling

Nevertheless, Penny contends that this case presents the "extraordinary circumstances" sufficient to warrant the application of equitable tolling. As a preliminary matter, neither the Supreme Court nor the Seventh Circuit have decided whether equitable tolling is available under § 2254. *Lawrence v. Florida*, 549 U.S. at 336, 127 S. Ct. at 1085 (2007) (acknowledging that the Court has never "decided whether § 2244(d) allows for equitable tolling," but assuming without deciding that it is available in the case because of agreement of parties); *Williams v. Buss*, 538 F.3d 683, 685 (7th Cir. 2008) (citing *Johnson v. Chandler*, 224 F. App'x. 515, 519 (7th Cir. 2007)) (explaining that the Seventh Circuit has never "ruled whether or not equitable tolling should be available at all in a § 2254 context"). Equitable tolling may be available, under very limited circumstances, under 28 U.S.C. § 2255, which governs habeas corpus petitions by federal prisoners. *United States v. Marcello*, 212 F.3d 1005, 1010 (7th Cir. 2000) (stating that § 2255 may be equitably tolled, but that "equitable tolling is granted sparingly," and requires "[e]xtraordinary circumstances far beyond the litigant's control"). However, the availability of equitable tolling in habeas corpus petitions by state prisoners is unclear because the § 2255' s one-year limitation is not jurisdictional, *id.*, while § 2254's similar time limitation applicable to state prisoners petitioning for habeas corpus may be considered jurisdictional because § 2244(d) contains specific statutory tolling provisions that were arguably intended to replace the common law doctrine of equitable tolling. *See Johnson*, 224 F. App'x. at 518-19. Therefore, if the § 2254 time limitation is considered jurisdictional, due to the statutory tolling provisions of § 2244(d), equitable tolling may not be available.

Nonetheless, nearly every other circuit has determined that equitable tolling may be available under § 2254. *Earl v. Fabian*, No. 07 C 3544, 2008 WL 426063, at *3-4 (8th Cir. Feb. 23, 2009); *Mendoza v. Carey*, 449 F.3d 1065, 1071 (9th Cir. 2006); *Satterfield v. Johnson*, 343 F.3d 185, 195 (3d Cir. 2006); *Doe v. Menefee*, 391 F.3d 147, 159 (2d Cir. 2004); *Neverson v. Farquaharson*, 366 F.3d 32, 39-41 (1st Cir. 2004); *Rouse v. Lee*, 339 F.3d 238, 246-47 (4th Cir. 2003); *Knight v. Schofield*, 292 F.3d 709, 711 (11th Cir. 2002); *Woodward v. Williams*, 263 F.3d 1135, 1143 (10th Cir. 2001); *Phillips v. Donnelly*, 216 F.3d 508, 511 (5th Cir. 2000).[7]

Even assuming equitable tolling does apply, it "requires 'extraordinary circumstances far beyond the litigant's control.'" *Williams*, 538 F.3d at 685 (quoting *Marcello*, 212 F.3d at 1010). "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Williams*, 538 F.3d at 685 (quoting *Pace*, 544 U.S. at 418, 125 S. Ct. at 1814). Specifically, the Seventh Circuit has explained that where other courts have permitted equitable tolling under § 2254, they have done so "most often when the state or district court misled the prisoner or failed to notify the prisoner of their decisions." *Johnson*, 224 F. App'x at 519; *see, e.g.*, *Taylor v. Horn*, 504 F.3d 416, 426-27 (3d Cir. 2007) (allowing equitable tolling where district court had assured petitioner that claims presented in timely petition would remain timely in amended petition); *Brinson v. Vaughn*, 398 F.3d 225, 231 (3d Cir. 2005) (allowing equitable tolling where district court mistakenly dismissed petitioner's first petition).

---

[7] Aside from the Seventh Circuit, which has not decided the issue, the sole exception is the Sixth Circuit, which applies its own "five factor test for judicial tolling" in lieu of the equitable tolling doctrine employed by the other circuits. *Solomon v. United States*, 467 F.3d 928, 941 (6th Cir. 2006) (Griffin, J., dissenting) ("[O]ur court stands alone within the circuits in employing our peculiar test to evaluate the timeliness of petitions for habeas corpus.").

This case does not present the extraordinary circumstances warranting equitable tolling, because our denial of the stay and dismissal of the petition were not erroneous or misleading. When Penny filed his then-timely habeas petition on August 7, 1997, he was concerned that his attempt to obtain post-conviction relief through collateral state proceedings would render his federal habeas claim time-barred. (1997 Mot. Stay, Dkt. No. 4.) Thus, he concurrently filed a motion to stay the federal proceedings while he pursued his first state post-conviction action. (*Id.*) A federal habeas corpus petition containing unexhausted claims should normally be dismissed without prejudice. *See Rhines v. Weber*, 544 U.S. 269, 273-77, 125 S. Ct. 1528, 1532-35 (2005); *Rose v. Lundy*, 455 U.S. 509, 522, 102 S. Ct. 1198, 1205 (1982). A district court has the discretion to stay an unexhausted habeas petition only under "limited circumstances." *Rhines*, 544 U.S. at 277, 125 S. Ct. at 1535. A stay should normally be granted when the petitioner's attempt to exhaust state remedies would "effectively end any chance at federal habeas review," by ensuring the expiration of the § 2244(d) time limitation. *Tucker v. Kingston*, 538 F.3d 732, 735 (7th Cir. 2008) (quoting *Dollis v. Chambers*, 454 F.3d 721, 725 (7th Cir. 2006)); *see also Freeman*, 208 F.3d at 577. However, a stay is less appropriate when the petitioner would have sufficient time to re-file his federal habeas petition. *Tucker*, 538 F.3d at 735. The petitioner in *Tucker* was not entitled to a stay because more than five months remained in the limitation period when the district court dismissed his petition. *Id.* Similarly, when Penny's habeas corpus petition was dismissed on August 18, 1997, over four months remained in his § 2244(d) limitation period. (Order of 8/18/1997, Dkt No. 5.)

In denying Penny's motion for a stay, we observed that while we "ha[d] discretion to stay consideration of the petition pending exhaustion of state remedies, there [was] no compelling reason to do so here." (*Id.*) Specifically, we explained that "if [Petitioner] acts

-16-

with reasonable diligence he will not be barred from petitioning this court if he cannot obtain relief [in state court]." (*Id.*)  Indeed, Penny's first post-conviction action was found untimely by the state court on September 29, 1997, leaving Penny over three months to return to this Court – with a state finding of untimeliness in hand – to re-file his federal habeas petition and move for another stay.  *See Freeman*, 208 F.3d at 577.  But Penny did not return to this court again for nearly three years.  When Penny sought another stay on July 17, 2000, we dismissed the motion as moot because the habeas petition had never been re-filed.  (Order of 7/24/2000, Dkt. No. 10.)  We stated then that while a dismissal with leave to reinstate was the equivalent of a stay, the dismissal was preferable because it "avoids unnecessary delay by requiring the Petitioner to promptly notify the court once state proceedings have been completed."  (*Id.*)

Finally, even setting aside Penny's failure to re-file his habeas petition in the three month period following the state court's determination that his first post-conviction action was untimely, Penny's one attempt to preserve his claims before this court over the course of eleven years does not amount to reasonable diligence.  Equitable tolling applies only where the petitioner "has been pursuing his rights diligently." *Williams*, 538 F.3d at 685 (quoting *Pace*, 544 U.S. at 418, 125 S. Ct. at 1814).  However, by the time Penny re-filed his habeas petition on July 15, 2008, nearly eight years had passed since his last attempt to maintain his claims before this court, and three years had passed since the Supreme Court in *Pace* held that a state court finding of untimeliness renders a post-conviction action improperly filed, and thus fails to toll the AEDPA time limitation.  *Pace*, 544 U.S. at 417, 125 S. Ct. at 1814.  It had been over eight months since the Supreme Court handed down *Allen v. Siebert*, which clarified that *Pace* applied to non-jurisdictional findings of timeliness such as those of the IPCHA and thus removed any doubt that Penny's federal habeas clock expired almost a decade earlier.  128 S.

Ct. at 3-4. Therefore, even if Penny's federal habeas clock could be tolled from the filing of his habeas petition on August 7, 1997 until the decision in *Allen* on November 5, 2007, his one-year time period still would have expired over three months before he filed for reinstatement of his habeas petition on July 15, 2008. Thus the application of equitable tolling is neither justified here, nor sufficient to save Penny's claim.

## IV. Rule 60(b) Relief

Similarly, as Respondent contends, even if the 1997 denial of a stay were erroneous, we could not vacate that decision. (Mot. at 13-14.) If Penny's current habeas petition, his state remedies now exhausted, could relate back to his original filing from 1997, his petition might be timely, just as it was when originally filed in 1997. *Newell v. Hanks*, 283 F.3d 827, 834-35 (7th Cir. 2002). In *Newell*, the Seventh Circuit permitted the district court to vacate a dismissal of the petition, effectively converting it into a stay, and thereby enabling the petitioner's otherwise untimely amended petition to relate back to the timely original petition. *Id. Arrieta v. Battaglia*, 461 F.3d 861 (2006), later clarified *Newell*, explaining that the district court had been permitted to vacate the earlier decision under Federal Rule of Civil Procedure 60(b)(1), which permits relief from judgment due to "mistake, inadvertence, surprise, or excusable neglect." 461 F.3d at 865-66; *see* FRCP 60(b)(1). Rule 60(b)(1) permits relief from judgment only within a year after the entry of the judgment or order. FRCP 60(c)(1). In contrast, motions for relief under the catch-all provision of Rule 60(b)(6), which permits relief from the judgment for "any other reason that justifies relief," are not limited to one year, but "must be made within a reasonable time." FRCP 60(c)(1).

In *Arrieta*, the petitioner moved to voluntarily dismiss his own petition while the district court was considering his motion for a stay. *Arrieta*, 461 F.3d at 863. The Seventh

-18-

Circuit found the petitioner's action to be a mistake, and thus held that he could only have moved for relief from the judgment within one year. *Id.* at 865. Moreover, the court explained that "[t]o the extent that the relief from judgment granted in *Newell* can be read as having been premised on a mistake by the court rather than the petitioner," the petitioner in *Newell* requested the relief within one year as required by Rule 60(b)(1). Thus, *Newell* and *Arrieta* require the conclusion that *if* the denial of the stay and the dismissal of the petition in this case were erroneous, Penny needed to request relief from the judgment within one year. However, Penny did not re-file his habeas petition until July 15, 2008, over a decade after the orders became final, which occurred upon the expiration of the one-year time limitation on January 1, 1998. *See Dolis v. Chambers*, 454 F.3d 721, 723-24 (7th Cir. 2006) ("[T]he district court's decision dismissing Dolis's petition without prejudice became effectively final at the moment when the one-year federal limitations period expired."). Thus, there can be no Rule 60 relief from those judgments. Even if the relief sought could fall into the 60(b)(6) catch-all category – meaning that the denial of the stay and dismissal of the petition were not mistakes, but relief is justified nevertheless – the intervening decade cannot be considered a "reasonable time." *See* FRCP 60(c)(1).

## V. Subsequent Diligent Discovery of Factual Predicates

As explained above, Penny contends that he discovered the factual basis of the claims relating to his trial counsel's alleged conflict of interest while doing research for this federal habeas corpus claim during March 1999.[8] (Resp. at 7.) If Penny is correct, the one-year

---

[8] Penny's petition does not include the claims related to trial counsel's conflict of interest on its face, as he has simply re-submitted the same petition from 1997, attaching the records of the subsequent state proceedings, including those litigating this claim. (Am. Pet., Dkt. No. 18; Pet., Dkt. No. 1.) In the interest of construing Penny's claims liberally, and because both parties have addressed this claims in their briefs, we will consider these claims as part of Penny's amended habeas corpus petition. (Mot. at 17-19; Resp. at 7.)

AEDPA time limitation would begin to run from March 1999 and would be properly tolled by the filing of the second state post-conviction proceeding on February 7, 2000, because that second proceeding was not deemed untimely. (Ex. X.) While the circuit court did not dismiss the second set of state post-conviction claims as untimely, the court did not necessarily decide that Penny could not have discovered the facts earlier through due diligence. When docketing the claims for the second stage proceeding, the court explained that successive petitions based on newly-discovered evidence require proof that the evidence could not have been discovered sooner through the exercise of due diligence, and that the evidence must be of "such convincing character that it would likely change the outcome of the trial." (Ex. Q at 3.) In ultimately dismissing these claims, the court did not discuss the initial requirement that the evidence could not be discovered through due diligence, relying instead on the grounds that Penny failed to show that Slaughter was ineffective in his trial. (Ex. X.) Thus, the state court did not accept Penny's claim that the evidence could not have been discovered sooner, but rather dismissed his petition based on Penny's failure to meet the prejudice requirement.

The State contends that Penny could have had knowledge of the conflict through due diligence prior to March 1999, as the conflict became evident during Penny's mother's trial in the early 1990s. (Mot. at 18-19.) More importantly, however, Penny's explanation that he discovered the conflict while conducting research for this habeas corpus petition in 1999 is inadequate, because Penny would have had to conduct that same research in 1997, before his one-year § 2244 time limitation expired. Thus, even if we accept as true that Penny actually did not know of the predicate facts until March 1999, Penny still has not made any showing that he could not have known about the facts prior to commencement of his federal habeas

clock on January 1, 1997, and in fact the circumstances suggest that Penny not only could have known, but should have known about the facts through the exercise of due diligence.

## CONCLUSION

For the reasons stated above, we deny Michael Penny's petition for writ of habeas corpus.

_____
Honorable Marvin E. Aspen
United States District Judge

Date: May 11, 2009